**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

CARLOS SALAS,

                Plaintiff,         21-CV-1728 (OTW)

      -against-         **OPINION & ORDER**

LEO'S BAGELS HANOVER SQUARE LLC, et al.,

                Defendants.

-------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

Plaintiff brings this action under the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL") for Defendants' failure to pay minimum and overtime wages and failure to provide wage statements and notices. (ECF 34 at 1). Defendants employed Plaintiff at their bagel restaurant, Leo's Bagels Hanover Square. (ECF 34 at 1). The parties submitted their proposed FLSA Settlement Agreement (ECF 34-1) to the Court for approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The *Cheeks* papers were then referred to me for a report and recommendation. (ECF 35). On June 1, 2022, I ordered the parties to submit supplemental information. (ECF 37). On June 28, 2022, the parties consented to my jurisdiction for all purposes (ECF 41) and filed the required materials. (ECF 40). For the reasons below, the settlement is **APPROVED**, subject to a reduction in attorney's fees, as described below.

I.  **Background**

Plaintiff was employed as a delivery worker from approximately October 2019 until on or about February 11, 2021. (ECF 1 ¶ 39). Although he was employed as a delivery worker, Plaintiff alleges that he spent a considerable part of his workday performing non-tipped work, such as preparing sauces, cutting tomatoes, washing dishes, sweeping, mopping, preparing chicken, and taking out the trash. (ECF 1 ¶ 5). Plaintiff alleges that Defendants accounted for Plaintiff as a delivery worker in their payroll to avoid paying him the minimum wage rate, but that he spent more than 20% of his time doing non-tipped work. (ECF 1 ¶¶ 8–10). Plaintiff alleges that during this time, he worked more than 40 hours per week without appropriate minimum wage and overtime compensation; that Defendants failed to maintain accurate recordkeeping of the hours worked; and that Defendants failed to pay Plaintiff appropriately for his time, either at the straight rate of pay or for any additional overtime. (ECF 1 ¶¶ 6–7). In addition, Plaintiff alleges that Defendants maintained a policy of appropriating Plaintiff's tips and made unlawful deductions from Plaintiff's salary. (ECF 1 ¶ 12).

Plaintiff filed his Complaint on February 26, 2021, suing for unpaid minimum and overtime wages pursuant to the FLSA, and for violations of the NYLL, including liquidated damages, interest, attorneys' fees and costs. (ECF 1).

II.  **Discussion**

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals

settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will recommend approval of such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

### a) Arm's Length Negotiation

The parties represent that the settlement was a product of extensive settlement discussions. (ECF 34 at 1). The parties provide no additional details.

### b) Risk of Fraud or Collusion

There is nothing in the record to suggest that fraud or collusion played a role in the settlement.

### c) Settlement Agreement Provisions

This agreement does not include provisions that courts have found fatal in other proposed FLSA settlements. *See, e.g.*, *Thallapaka v. Sheridan Hotel Associates LLC*, No. 15-CV-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) (finding an "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements).

### d) Attorneys' Fees

The proposed Settlement Agreement calls for Defendants to pay $16,000, distributing $9,600 to Plaintiff and $6,400 to Plaintiff's counsel. (ECF 40-1). Counsel's portion, as described

in the Settlement Agreement, is 40% of $16,000 (6,400 / 16,000 = 0.4), which counsel represents is the percentage agreed upon in Plaintiff's Retainer Agreement.[1] Plaintiff's *Cheeks* submission states, however, that counsel seeks only $5,280 in fees and costs, and states that the amount sought "is a reduction in fees from the provisions of the Plaintiffs' retainer agreements, which provide that forty percent of Plaintiff's recovery will be retained by the firm."[2] (ECF 34 at 2). The June 1, 2022 Order (ECF 37) directed Plaintiff's counsel to file an "updated signed settlement agreement that . . . is consistent with the amounts stated in the parties' *Cheeks* motion," but counsel failed to do so.

Counsel's *Cheeks* briefing further incorrectly states that $5,280 would represent "renumeration of the filing fee and service of process ["fees"], plus one-third of the remainder recovery in this litigation ["costs"]. (ECF 34 at 2). But this is also incorrect. One third of $16,000, before costs, is $5,333.33. And one-third of 16,000 after costs of $630 (*see* ECF 34-3) is $5,123.33.

---

[1] The Court ordered counsel to supplement its *Cheeks* submission with, *inter alia*, a copy of the Retainer Agreement. (ECF 37). The document counsel filed (ECF 40-2) states, in relevant part, "If the claims are settled by you without the consent of the firm, you agree to pay the Firm the contingency fee *described above* based on the full amount of the settlement recovery . . . .") (emphasis added). The Retainer Agreement does not identify "the contingency fee described above." (ECF 40-2).

[2] Notably, this Court has repeatedly declined to award fees representing more than one-third of the total settlement amount. *See, e.g.*, *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 343 (S.D.N.Y. 2016) (collecting cases).

After reviewing CSM Legal's submission, I find that CSM Legal's lodestar calculation is also inflated, as discussed below:

- CSM Legal lists Mr. Faillace's hourly rate at $450. This rate is excessive for this case. Accordingly, I join "many others in the circuit in finding Mr. Faillace's hourly rate excessive," and reduce his hourly rate to $400.[3] *Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245, 252 (S.D.N.Y. 2019) (citing *Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-CV-9632 (AJN), 2019 WL 330631, at *2 (S.D.N.Y. Jan. 25, 2019).

- CSM Legal represents that Kevin Johnson's hourly rate is $375, but the billing records reflect an hourly rate of $400—a rate previously found reasonable for Mr. Faillace, an attorney who, at the time he was disbarred, had over thirty years of experience litigating FLSA cases. I do not find Mr. Johnson's hourly rate of $400 reasonable. Mr. Johnson graduated from New York Law School in 2011 and has litigated FLSA matters at Mr. Faillace's firm, and now at CSM Legal. Clela Errington graduated from NYU School of Law in 2012 and similarly litigated labor and employment matters prior to joining what is now CSM Legal. Ms. Errington's hourly rate is $350, which I find reasonable. Accordingly, I reduce Mr. Johnson's hourly rate to $350 as well.

- CSM Legal does not disclose any information or provide any support for the 4.3 hours charged by "JL" at $400 per hour, amounting to $1,720. The Court notes, however, that a Mr. James O'Donoghue LaRusso filed a Notice of Appearance in this case. (ECF 20). CSM Legal's billing records reflect Mr. LaRusso's hourly rate was $400. Because CSM Legal failed to submit any supporting information about Mr. LaRusso's qualifications, I find this hourly rate excessive, and reduce it to be commensurate with other associates at $350.

Accordingly, I find that the following number of hours billed by CSM Legal at the following rates to be reasonable: 5.8 hours at the reduced associate rate ($350 for KSJ, JL, and CE); 2.4 hours at Mr. Faillace's reduced rate ($400); and 8.5 hours at the paralegal rate ($125). This yields an attorneys' fee award in the amount of **$4,052.50**.[4]

---

[3] Counsel states that "[n]o funds will be distributed to Mr. Faillace unless an application is made to the court on his behalf, and order is entered to that effect." (ECF 34 at 3 n.1).

[4] (5.8 x $350 = 2,030) + (2.4 x $400 = $960) + (8.5 hours x $125 = $1,062.50) = $4,052.50.

Although there is not a proportionality requirement, attorneys' fees settlements generally amount to one-third of the settlement award. *See, e.g.*, *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848 (KBF), 2017 WL 2266874, at *5 (S.D.N.Y. May 23, 2017) ("In this Circuit, courts typically approve attorneys' fees that range between 30 and 33 1/3 %."). However, "[t]he size and difficulty of the issues in the case are factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-CV-4216 (RLE), 2014 WL 3778173, at *10 (S.D.N.Y. July 31, 2014).

This case settled nine months after the Complaint was filed. Plaintiff's counsel spent a total of 16.70 hours on the action, 8.5 of which are attributable to a paralegal. (ECF 34-3). The complexity of representing one individual Plaintiff presented minimal factual and logistical challenges. According to Plaintiff's counsel's invoice, the parties exchanged initial disclosures, interrogatories, and damages charts, but did not take any depositions or engage in further discovery. There was no briefing of motions to dismiss or summary judgment.

Given the relatively modest effort and expense counsel underwent to reach this agreement, the attorneys' fees and costs shall be reduced to **$4,682.50**.[5] *See Guzman v. Joesons Auto Parts*, No. CV 11-4543 (ETB), 2013 WL 2898154 (E.D.N.Y. June 13, 2013) ("Where the risks in the litigation are not particularly high and the parties reach a tentative settlement relatively shortly after the filing of an action, a reduction in the attorney fees awarded is appropriate.");

---

[5] $4,052.50 (fees) + $630 (costs) = $4,682.50.

*see also Bricker v. Planet Hollywood N.Y., L.P.*, No. 08-CV-443 (WHP), 2009 WL 2603149, at *3 (S.D.N.Y. Aug. 13, 2009) (reducing fee award from one third to one quarter where case reached tentative settlement after ten months). Thus, of the $16,000 settlement amount, $4,682.50 will be awarded to counsel, and Plaintiff will receive $11,317.50.

### e) Range of Recovery and Litigation Risks

Plaintiff calculated that he would be entitled to $52,221.78 if he won after trial.[6] (ECF 34-2). A take-home amount of $11,317.50 is only approximately 22% of his potential recovery,[7] but nearly 77% of his unpaid wages and overtime.[8] Although Plaintiff would be accepting a relatively small percentage of what he is claiming, courts may approve lower settlement percentages where there are significant barriers to prevailing at trial, *e.g.*, conflicting evidence. *See Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving 25% of maximum recovery).

Here, Plaintiff acknowledges that "there were sharply contested factual and legal disputes that went to the heart of Plaintiff's claims." (ECF 34 at 2). Specifically, "Defendants vigorously contested all of Plaintiff's substantive allegations, contesting the number of hours allegedly worked by plaintiff." (ECF 34 at 2). The parties provide no additional information. Because Plaintiff would still receive more than three-quarters of his claimed unpaid wages and overtime, I find the settlement amount to be fair and reasonable.

---

[6] Total unpaid wages and overtime ($14,782.50) + Liquidated damages on wages and overtime ($14,782.50) + Pre-judgment interest on wages ($1,056.78) + Wage Notice Claim ($5,000) + Wage Statement Claim ($5,000) + Withheld tips ($11,600) = $52,221.78.

[7] (11,317.50 / 52,221.78 = 0.22).

[8] (11,317.50 / 14,782.50 = 0.77).

### III. Conclusion

For the foregoing reasons, the Settlement Agreement amount of **$16,000** is approved, with a reduction in attorneys' fees and costs from $6,400 to $4,682.50. Accordingly, **$11,317.50** will be disbursed to the Plaintiff, and **$4,682.50** will be awarded to counsel.

**SO ORDERED.**

Dated: July 1, 2022
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge